# EXHIBIT A

**DEREK SMITH LAW GROUP, LLP**
Olivia Uzan (SBN 330149)
633 W. 5th Street, Suite 3250
Los Angeles, CA 90071
Telephone: (310) 602-6050
Facsimile: (310) 602-6350
Email: olivia@dereksmithlaw.com

*Attorneys for Plaintiff JANE DOE*

Electronically FILED by Superior Court of California, County of Los Angeles 8/13/2026 2:48 PM David W. Slayton, Executive Officer/Clerk of Court, By S. Ruiz, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

JANE DOE[1], an individual,

Plaintiff,

v.

ONE SOURCE TO MARKET, LLC. D/B/A HEXCLAD, and DANIEL WINER, individually,

Defendants.

Case No.: 26STCV25604

COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

1. Sexual Battery
2. Sexual Assault
3. Sexual Harassment and Harassment based on Race, Color, National Origin, Sex and Gender, in Violation of FEHA [Cal Gov't Code § 12940(j)]
4. Discrimination based on Race, Sex and Gender, in Violation of FEHA [Cal. Gov't Code § 12940(a)]
5. Failure to Prevent Harassment and Discrimination in Violation of the FEHA [Cal. Gov't Code § 12940(k)]
6. Aiding and Abetting Discrimination in Violation of FEHA [Cal. Gov't Code § 12940(i)]
7. Negligence
8. Negligent Hiring and Retention
9. Constructive Discharge in Violation of Public Policy
10. Intentional Infliction of Emotional Distress
11. Negligent Infliction of Emotional Distress

DEMAND FOR JURY TRIAL

[1]Because of the nature of the allegations herein, Plaintiff is identified by a pseudonym in order to preserve her confidentiality and to avoid any potential vilification or harm, pursuant to applicable law, including *Doe v. Penzato*, 2011 U.S. Dist. LEXIS 51681, 2011 WL 1833007.

COMES NOW Plaintiff, JANE DOE, and for causes of action against the Defendants and each of them, alleges as follows upon information and belief:

## I.

## PARTIES

1. At all times material, JANE DOE (hereinafter referred to as "Plaintiff"), was and is an individual African American female residing in Los Angeles, California.

2. At all times material, Defendant ONE SOURCE TO MARKET, LLC. D/B/A HEXCLAD (hereinafter referred to as "HEXCLAD") was and is a corporation doing business in the State of California, with their principal place of business located at 500 S Anderson Street., Los Angeles, CA 90033.

3. At all times material, Defendant DANIEL WINER (hereinafter referred to as "WINER") was and is the Chief Executive Officer for Defendant HEXCLAD.

4. At all times material, Defendant WINER held supervisory authority over Plaintiff, controlling various tangible aspects of Plaintiff's employment including the ability to hire and fire Plaintiff.

5. Defendants HEXCLAD and WINER are collectively referred to as "Defendants" hereinafter.

## II.

## JURISDICTION

6. Defendant HEXCLAD is subject to suit under the California Fair Employment and Housing Act ("FEHA") as it regularly employs five or more persons in the State of California. [Cal. Gov't Code § 12926(d)].

7. Defendant WINER is an individual subject to suit under FEHA. [Cal. Gov't Code § 12940(j)(3)].

8. Venue properly lies in the County of Los Angeles in that the Plaintiff resided in the county during the relevant times; all Defendants reside in this county, do business in, and/or committed the wrongful acts alleged herein within the County of Los Angeles.

9. Plaintiff has exhausted all administrative remedies necessary and has timely brought this action.

10. This court has jurisdiction to hear both statutory and common law claims against Defendants.

## III.

## <u>FACTS COMMON TO ALL CAUSES OF ACTION</u>

11. On or about June 10, 2024, Defendants HEXCLAD and WINER hired Plaintiff as an Executive Assistant.

12. Shortly after Plaintiff was hired, and continuing throughout her employment, Defendant WINER made repeated racist and discriminatory remarks targeting individuals from various protected classes. WINER disparaged African Americans by stating "***Even if they're black, I would hire them as long as they make money.***" He also made derogatory comments about a Latino employee, Isaiah, calling him ***"an idiot"*** and ***"dumb"*** and stating, ***"He doesn't speak English, he's from Mexico."*** On another occasion, when Plaintiff attempted to introduce WINER to a new employee, WINER responded by saying, ***"Who the hell hired this fat, chubby Asian Girl?"***

13. Each time Plaintiff witnessed WINER's racist remarks, she was deeply uncomfortable and disturbed.

14. Plaintiff tried to ignore these comments, hoping things would improve. However, the harassment escalated.

15. On or about July 17, 2024, while in his office with Plaintiff, **<u>WINER asked Plaintiff to administer an injection into his buttocks as part of a medical treatment</u>**. Plaintiff was shocked and profoundly uncomfortable. Having only recently started her employment, she feared that refusing would jeopardize her position. Out of fear and distress, she complied. **<u>WINER then proceeded to pull down his pants, exposing his bare buttocks to Plaintiff.</u>** Plaintiff was mortified and attempted to avert her eyes to avoid seeing her employer's exposed body.

16. Thereafter, Defendant WINER required Plaintiff to administer these injections. Initially, this occurred once a week, but beginning in December 2024, the frequency increased to as often as two to three times per week.

17. **Each time, Defendant WINER unzipped his pants, expose his bare buttocks, and required Plaintiff to wipe and pinch his skin during the injection. These episodes lasted approximately one excruciating minute each and took place behind closed doors, with Plaintiff left alone in the office with Defendant WINER.**

18. Out of desperation, Plaintiff suggested using a larger needle to reduce the duration of these invasive encounters. Defendant WINER refused, thereby prolonging Plaintiff's repeated physical contact with his exposed body.

19. On or about September 27, 2024, Plaintiff was involved in a serious car accident and suffered from severe concussions. Despite her injuries, Plaintiff attempted to continue fulfilling her job responsibilities and returned to work the following week.

20. In or around November of 2024, during the Entrepreneur of the Year event in Palm Springs—where Defendant WINER was a nominee — Plaintiff was required to accompany him.

21. While seated next to her during the event, Defendant WINER took a photograph of himself with Plaintiff and sent it to his girlfriend, referring to Plaintiff as his ***"hot date."***

22. Plaintiff was extremely uncomfortable and humiliated by this inappropriate and objectifying behavior.

23. In or around December of 2024, Defendant WINER confided in Plaintiff about his intimate relationship with his girlfriend, sharing highly inappropriate and extremely graphic details. **He told Plaintiff that his girlfriend's vagina had a very bad odor and that he felt like vomiting when performing oral sex on her.** He then added that when his girlfriend wanted to ***"suck*** [his] ***dick,"*** he was ***"disgusted because all her discharge was on*** [his] ***dick."***

24. Plaintiff was deeply disturbed and disgusted by these unsolicited and crude

disclosures, managing only to utter "Oh my gosh," frozen in discomfort and disbelief. Aware of the egregious nature of his comments, Defendant WINER added, ***"You could probably sue me for this."***

25. On or about January 28, 2025, after Plaintiff mentioned she had a waxing appointment scheduled, Defendant WINER persistently questioned her about the nature of the appointment, prompting Plaintiff to disclose that it was a Brazilian wax.

26. In response, Defendant WINER suggested, inappropriately and without any justification, that Plaintiff should post images of the waxing results on the company's Slack channel for all employees to see. Plaintiff was deeply uncomfortable and disturbed by the comment but remained silent out of fear of professional retaliation and potential loss of her job.

27. In or around January of 2025, a co-worker, Martha, approached Plaintiff and informed her that Defendant WINER had stated he hired Plaintiff because of Plaintiff's "curvy body," adding that he "likes curvy women."

28. This comment deeply unsettled Plaintiff. In an effort to avoid further sexualized remarks or harassment, she began altering the way she dressed to minimize attention.

29. On or about February 17, 2025, Defendants' Vice President of Human Resources Panagiota Hatzis ("Hatzis"), informed Plaintiff that Defendant WINER wanted Plaintiff **to resume dressing as she did when she started working at the company**. Plaintiff was deeply distressed by these remarks, which was part of the ongoing pattern of sexual harassment she had been subjected to in the workplace.

30. On or about March 20, 2025, due to ongoing pain and anxiety stemming from the recent car accident and resulting concussions, as well as the continuing discrimination in the workplace, Plaintiff notified Defendants of her need to take medical leave.

31. On or about March 20, 2025, Hatzis emailed Plaintiff to confirm that her medical leave would extend until April 11, 2025. However, Hatzis added: *"If there's any likelihood that your leave will continue beyond that day,* ***we're going to have to look to fill the position. It's not practical for***

***Danny [WINER] not to have an executive assistant in place for any length of time.”***

32. This statement constituted **a direct threat of termination** if Plaintiff did not return to work by April 11, 2025, despite being on protected medical leave. Defendants unlawfully retaliated against Plaintiff for asserting her right to medical leave.

33. On or about March 27, 2025, Plaintiff reported to Human Resources the sexual harassment she had endured throughout her employment.

34. On or about March 28, 2025, Hatzis emailed Plaintiff that she had “formally opened an investigation,” without indicating whether Defendant WINER had been suspended, so as to provide Plaintiff with a safe work environment.

35. On or about April 2, 2025, Plaintiff informed her employer that her medical leave for stress had been extended due to her mental and emotional distress.

36. On or about May 16, 2025, Plaintiff received an email from Defendant WINER that had been mistakenly sent to her, concerning Plaintiff’s inadvertent use of the Company’s booking system. Plaintiff had mistakenly used the reservation platform “Open Table” through her employer’s account instead of her personal account. Upon realizing the error, she immediately canceled the reservation, incurring no cost to her employer. Nevertheless, Defendant WINER mistakenly included Plaintiff on an email in which he blatantly stated:

> *“Panigiota? Did Ryan tell you to tell her about the Las Vegas reservation? Please explain to me why we would reveal that. Josh said this is a great opportunity to collect information in case she* [Plaintiff] *winds up suing us.”*

37. Plaintiff understood from this email that not only had the Company failed to take appropriate action against Defendant WINER, but, on the contrary, management was colluding with him to fabricate pretextual grounds for a wrongful termination.

38. Plaintiff was extremely shocked as she now had certainty that Defendants’ purported investigation was nothing more than a farce, and a sham conducted in bad faith.

39. On or about June 11, 2025, Panagiota Hatzis emailed Plaintiff to advise that the

investigation was still “ongoing,” again without any indication of corrective action regarding Defendant WINER.

40. On or about July 9, 2025, disgusted by the Company’s accumulated lies and its failure to protect her, Plaintiff was constructively discharged.

41. Defendants created a hostile work environment for Plaintiff, discriminated against Plaintiff, and harassed Plaintiff because of Plaintiff’s sex and gender.

42. Defendants’ actions and conduct were directed at intentionally harming Plaintiff.

43. Defendant WINER sexually assaulted, battered and harassed Plaintiff.

44. As a result of the above discriminatory and intolerable treatment by Defendants HEXCLAD and WINER, Plaintiff has suffered and will continue to suffer from insomnia, nightmares, racing thoughts, anxiety, low confidence, and post-traumatic stress.

45. Because of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, bonuses, benefits, and other compensation, which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

46. As Defendants’ conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants.

47. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

48. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting conditions as a result of Defendants’ discriminatory conduct.

49. Plaintiff claims alternatively (in the event Defendant Claims so or that the Court determines) that Plaintiff is an Independent Contractor, Volunteer, or Applicant, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable laws pertaining to Independent Contractors, volunteers, or applicants.

50. Plaintiff claims unlawful constructive and/or unlawful actual discharge and also seeks reinstatement.

51. Furthermore, in such case, Plaintiff claims that Defendant HEXCLAD owed and breached its duty to Plaintiff to prevent the harassment and discrimination, and is liable therefore for negligence.

52. The above are just some of the examples of the unlawful discrimination and disparate treatment to which the Defendants subjected the Plaintiff on a frequent and ongoing basis throughout Plaintiff's employment.

**IV.**

**FIRST CAUSE OF ACTION FOR SEXUAL BATTERY**

(Against all Defendants)

53. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein. At all relevant times, Civil Code § 1708.5 was in full force and effect. **Section 1708.5(a)** provides that *a person commits a sexual battery if he/she (1) acts with the intent to cause a harmful or offensive contact with an intimate part of another (or to cause an imminent apprehension of such contact), and a sexually offensive contact with that person directly or indirectly results, and (2) the person touched did not consent.* The statute defines "intimate part" to include, inter alia, a person's buttocks, and "offensive contact" as one that offends a reasonable sense of personal dignity.

54. Defendant WINER's conduct meets the definition of sexual battery. On multiple occasions, Defendant WINER directed Plaintiff to administer injections to him in a private setting. In doing so, Defendant WINER unzipped his pants and exposed his bare buttocks to Plaintiff, then required Plaintiff to wipe and pinch his buttock skin as part of the injection process. Defendant WINER intentionally caused Plaintiff to come into physical contact with the intimate parts of his bare buttocks for his own gratification or convenience, knowing such contact was unwelcome and offensive. Plaintiff never consented to this intimate touching; she complied solely out of fear of losing her job if she refused Defendant WINER's demands. Defendant WINER's acts were done with the intent to cause offensive, sexual contact and such contact did occur directly to Plaintiff,

without Plaintiff's consent, making WINER liable for civil sexual battery under § 1708.5.

55. As a direct and proximate result of Defendants' sexual battery, Plaintiff suffered injuries and damages including but not limited to severe emotional distress, humiliation, mental anguish, and violation of her personal dignity. Plaintiff experienced shock, anxiety, nightmares, and ongoing psychological trauma due to being forced into non-consensual sexual contact by her superior. Plaintiff has also incurred and will continue to incur medical and therapy expenses to address the trauma.

56. Defendant HEXCLAD is vicariously liable for the sexual battery committed by its CEO and managing agent, Defendant WINER, under the doctrine of respondeat superior and because HEXCLAD ratified Defendant WINER's misconduct by failing to take action to stop it despite knowledge. Defendant WINER's actions occurred at the workplace, during work hours, and under the guise of a work-related task, making the employer responsible to the extent permitted by law. Furthermore, Defendant HEXCLAD's officers and HR personnel were informed of Defendant WINER's inappropriate conduct yet allowed it to continue, thereby ratifying the battery and compounding Plaintiff's harm.

57. The acts of Defendants, as described above, were oppressive, fraudulent and malicious, done with a conscious disregard of Plaintiff's rights and with the intent to cause injury. Defendant WINER acted despicably and with intentional harm in abusing his authority to force sexual contact. Defendant HEXCLAD, through its managing agents, ratified or failed to prevent these acts, acting in willful disregard of Plaintiff's rights. Accordingly, Plaintiff seeks general and special damages, as well as punitive damages in an amount appropriate to punish Defendants and deter such egregious conduct in the future. Plaintiff also seeks any appropriate equitable relief and attorneys' fees and costs as allowed by law.

## V.

## SECOND CAUSE OF ACTION FOR SEXUAL ASSAULT

(Against All Defendants)

58. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein. Under California common law, an assault is committed where a defendant intentionally acts in a manner that

causes the plaintiff to reasonably apprehend an imminent harmful or offensive physical contact. It is not necessary that the contact actually occur; causing fear of an immediate battery is sufficient to constitute assault.

59. Defendant WINER intentionally created a reasonable apprehension of immediate offensive contact in Plaintiff. In particular, WINER's aforementioned actions – cornering Plaintiff into a private office, unfastening his clothing and exposing his intimate body parts, and commanding Plaintiff to perform intimate touching – placed Plaintiff in imminent fear of unwelcome sexual touching. From the moment Defendant WINER began unzipping his pants and exposing himself, Plaintiff reasonably believed she was about to be touched or forced to touch him in a highly offensive and sexual manner. Each such incident constituted an act of sexual assault: Plaintiff was put in fear of immediate harmful or offensive contact with Defendant WINER's intimate parts, under circumstances where she was coerced and unsafe. Any **"**consent**"** by Plaintiff to approach or touch Defendant WINER was negated by duress and the power imbalance; she feared job loss, thus she did not voluntarily consent to the contact or the threat thereof.

60. As a result of WINER's intentional acts, Plaintiff suffered severe emotional and psychological harm, including anxiety, fear for her safety, and trauma from the anticipation of each incident. The terror and stress Plaintiff experienced anticipating Defendant WINER's next move are part of the damages from these assaults. Plaintiff's peace of mind and sense of personal security were deeply violated even when actual contact did not yet occur – the anticipation of sexual battery itself caused injury.

61. Defendant WINER's conduct was willful, wanton, and malicious. He acted with the intent to cause offensive contact or at least the apprehension of such contact, knowing that Plaintiff would fear for her bodily integrity. His behavior demonstrated a conscious disregard for Plaintiff's rights and safety, constituting despicable conduct. Accordingly, Plaintiff seeks compensatory damages for the mental anguish, fear, and emotional distress caused by the sexual assaults, as well as punitive damages to punish Defendants for their outrageous misconduct and deter similar abuse in the future.

## VI.

## THIRD CAUSE OF ACTION FOR SEXUAL HARASSMENT AND HARASSMENT BASED ON RACE, COLOR, NATIONAL ORIGIN, SEX AND GENDER [Cal. Gov't Code § 12940(j)]

62. Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

63. At all times relevant for purposes of this Complaint, Gov't Code §12900 et seq. were in full force and effect and were binding on all Defendants.

64. Gov't Code §12940(j)(1) states that it is unlawful "[f]or an employer…or any other person, because of…sex, gender, national origin, race and color…to harass an employee…."

65. During Plaintiff's employment, Plaintiff was subjected to harassment from Defendant WINER. Said conduct was severe, pervasive, constant and continuous, and was offensive, humiliating and harassing to Plaintiff and would have been offensive to a reasonable person under Plaintiff's circumstances.

66. The above described conduct, including derogatory remarks about African-Americans, Latinos and Asian employees, which Plaintiff personally overheard, was unwelcome and based on protected characteristics, and unreasonably interfered with Plaintiff's work environment by creating a workplace that was hostile, intimidating and offensive.

67. Defendant WINER engaged in sexually harassing conduct, and Defendant WINER harassed Plaintiff based on Plaintiff's sex and gender.

68. Plaintiff rebuffed and resisted Defendant WINER's harassing conduct, but Defendant HEXCLAD and WINER failed to take meaningful corrective action.

69. By failing to conduct a reasonable investigation and not taking proper remedial action, Defendants HEXCLAD ratified Defendant WINER's unlawful conduct.

70. As a proximate result of Defendants' conduct, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment-related opportunities for growth in Plaintiff's field and damage to Plaintiff's professional reputation, all in an amount subject to proof at the time of trial.

71. As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer without limitation insomnia, racing thoughts, anxiety, nightmares, low confidence, depression, post-traumatic stress, and severe emotional distress and has incurred and will likely incur, medical expenses as a result. Plaintiff will continue to experience said pain and mental and emotional suffering for a period in the future Plaintiff cannot presently ascertain, all in an amount subject to proof at the time of trial.

72. The conduct of Defendants, and each of them, and their agents and employees as described herein, was malicious, fraudulent, and oppressive, and done with a willful and conscious disregard for Plaintiff's rights.

73. As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been forced to hire attorneys to prosecute Plaintiff's claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover such attorneys' fees and costs under California Government Code Section 12965(b).

74. The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agent employees of Defendants acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner in order to injure and damage Plaintiff, thereby justifying an award to Plaintiff of punitive damages in a sum appropriate to punish and make an example of Defendants, and each of them.

## VII.

## FOURTH CAUSE OF ACTION FOR DISCRIMINATION BASED ON SEX AND GENDER, IN VIOLATION OF FEHA [Cal. Gov't Code §12940(a)]

(Against Defendant HEXCLAD)

75. Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

76. At all times relevant for purposes of this Complaint, the FEHA, Gov't Code §12940(a) was in full force and effect and binding on Defendants.

77. FEHA makes it unlawful for an employer, on the basis of sex and gender, "to discriminate against the person in compensation or in terms, conditions, or privileges of

employment."

78. Plaintiff, an was subjected to harassment based on Plaintiff's sex and gender.

79. Defendant WINER treated Plaintiff differently in the terms and conditions of employment in comparison to the other employees that were not of the same sex and gender, marital status, or parental status as Plaintiff.

80. Defendant HEXCLAD failed to take any remedial actions against Defendants WINER even after Plaintiff complained, resisted, and/or rebuffed sexual harassment by Defendant WINER.

81. Instead, Defendants HEXCLAD and WINER ignored Plaintiff's complaints and rebuffs, and as a result the harassment continued and worsened, leading to Defendants further sexual harassment of Plaintiff, discrimination against Plaintiff, and Plaintiff's constructive discharge.

82. As a proximate result of Defendants' conduct, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment-related opportunities for growth in Plaintiff's field and damage to Plaintiff's professional reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil Code Sections 3287 and/or 3288 and/or any other provision of law providing for prejudgment interest.

83. As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer without limitation insomnia, racing thoughts, anxiety, nightmares, low confidence, depression, post-traumatic stress, and severe emotional distress. Plaintiff will continue to experience said emotional suffering for a period in the future Plaintiff cannot presently ascertain, all in an amount subject to proof at the time of trial.

84. As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been forced to hire attorneys to prosecute Plaintiff's claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover such attorneys' fees and costs under California Government Code Section 12965 (b).

85. The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agent employees of Defendants acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner in order to injure and damage Plaintiff,

thereby justifying an award to Plaintiff of punitive damages in a sum appropriate to punish and make an example of Defendants, and each of them.

**VIII.**

**FIFTH CAUSE OF ACTION FOR FAILURE TO PREVENT HARASSMENT AND DISCRIMINATION IN VIOLATION OF FEHA [Cal. Gov't Code §12940(k)]**

(Against Defendant HEXCLAD)

86. Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein

87. At all times material, Gov't Code §§ 12940 et seq. were in full force and effect and were binding on all Defendants.

88. Gov't Code § 12940(k) states that it is unlawful in employment practice "[f]or an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

89. In perpetrating the above-described acts and failures to act, Defendants violated Gov't Code § 12940 by failing to ensure a workplace free of harassment, discrimination, and sexual harassment. Defendants are responsible for ensuring that CRD provisions are followed, including provisions prohibiting sexual harassment, discrimination and harassment based on race, sex and gender against employees.

90. In perpetrating the above-described acts and failures to act, Defendants violated Gov't Code § 12940 by failing to take all reasonable steps necessary to prevent such discrimination, harassment, and sexual harassment based on race, sex and gender from occurring.

91. Instead, Defendants created and fostered a hostile, offensive, inappropriate, and intolerable work environment, where discrimination, harassment, and sexual harassment were condoned, encouraged, tolerated, sanctioned, and ratified.

92. Defendants repeatedly violated Gov't Code § 12940(k). Defendants' acts and failures to act include, but are not limited to, the following:

(a) having no policies, practices, and procedures and/or failing to implement

policies, practices, and procedures and/or having ineffective policies, practices, and procedures regarding Defendants' obligations to refrain from discrimination and harassment;

(b) having no policies, practices, and procedures and/or failing to implement policies, practices, and procedures and/or having ineffective policies, practices, and procedures regarding the handling of complaints of discrimination and harassment;

(c) failing to investigate when discrimination and harassment were reported, despite there being such reports;

(d) failing to provide any and/or adequate training, education, or information to their personnel, and most particularly to management and supervisory personnel with regard to policies and procedures regarding preventing discrimination and harassment;

(e) failing to appoint a qualified, neutral third party to investigate an employee's allegations;

(f) failing to transfer employee to a new supervisor under the same terms and conditions of employment;

(g) failing to review the employer's anti-harassment policy with the harasser and imposing counseling or discipline as appropriate; and

(h) failing to take permanent remedial steps reasonably calculated to end the current harassment and deter future harassment from the same offender or others.

93. As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been harmed in that Plaintiff has suffered actual, consequential, and incidental financial losses, including without limitation loss of salary and benefits, and the intangible loss of employment-related opportunities for growth in her field and damage to her reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil Code §§ 3287 and/or 3288 and/or any other provision of law providing for prejudgment interest.

94. As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer without limitation insomnia, racing thoughts, anxiety, nightmares, low confidence, depression, post-traumatic stress, and severe emotional distress. Plaintiff has further

experienced other physical symptoms arising from the wrongful acts of Defendants, and each of them. Plaintiff will continue to experience said pain and physical and emotional suffering for a period in the future she cannot presently ascertain, all in an amount subject to proof at the time of trial.

95. The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agent employees of Defendants acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner in order to injure and damage Plaintiff, thereby justifying an award to them of punitive damages in a sum appropriate to punish and make an example of Defendants, and each of them.

**IX.**

**SIXTH CAUSE OF ACTION FOR AIDING AND ABETTING DISCRIMINATION IN VIOLATION OF THE FEHA [Cal. Gov't Code §12940(i)]**

(Against all Defendants)

96. Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

97. At all times material, Gov't Code § 12940 et seq. were in full force and effect and were binding on all Defendants.

98. Gov't Code § 12940(i) states that it is unlawful in employment practice "[f]or any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so."

99. As such term is used under FEHA, "any of the acts forbidden under this part" means or refers to discrimination and harassment on the bases of one or more of the protected characteristics under FEHA such as sex and gender.

100. These laws set forth in the preceding paragraph require Defendants to refrain from harassing, or creating, or maintaining a hostile work environment against an employee based upon her race, her sex and gender, and for aiding and abetting harassment and discrimination.

101. Defendant WINER's harassing conduct was severe and pervasive as described above, was unwelcome by Plaintiff, and a reasonable person in Plaintiff's circumstances would have

considered the work environment to be hostile and abusive.

102. Defendants violated the FEHA and the public policy of the State of California, which is embodied in the FEHA, by creating a hostile work environment, and by discriminating against and harassing Plaintiff because of her sex and gender.

103. Defendants HEXCLAD and WINER engaged in a concerted and coordinated effort to harass and discriminate against the Plaintiff as described above, and ignore Plaintiff's complaints and rebuffs of harassment, and discrimination, among the other acts described above.

104. As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been harmed in that Plaintiff has suffered actual, consequential, and incidental financial losses, including without limitation loss of salary and benefits, and the intangible loss of employment-related opportunities for growth in her field and damage to her reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil Code §§ 3287 and/or 3288 and/or any other provision of law providing for prejudgment interest.

105. As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer without limitation insomnia, racing thoughts, anxiety, nightmares, low confidence, depression, post-traumatic stress, and severe emotional distress. Plaintiff has further experienced other physical symptoms arising from the wrongful acts of Defendants, and each of them. Plaintiff will continue to experience said pain and physical and emotional suffering for a period in the future she cannot presently ascertain, all in an amount subject to proof at the time of trial.

106. The acts taken against Plaintiff were carried out by and/or ratified by Defendants and/or managing agent employees of Defendants acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner in order to injure and damage Plaintiff, thereby justifying an award to them of punitive damages in a sum appropriate to punish and make an example of Defendants, and each of them.

//

//

## X.

## SEVENTH CAUSE OF ACTION FOR NEGLIGENCE

(Against Defendant HEXCLAD)

107. Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

108. Following Defendant WINER's repeated sexual harassment, and discrimination of Plaintiff throughout Plaintiff's employment, Defendant HEXCLAD knew and/or had reason to know that WINER had and was capable of sexually and mentally harassing Plaintiff or other victims.

109. Defendants never provided Plaintiff with any sexual harassment training.

110. Defendants and their agents, independent contractors, and/or employees had a duty to provide Plaintiff a position free from discrimination, harassment, and sexual harassment.

111. Defendants were aware that Plaintiff was subjected to discrimination and harassment based on Plaintiff's race, sex and gender, and failed to take appropriate and corrective action.

112. HEXCLAD by and through its respective agents, servants and employees, and Plaintiff's numerous rebuffs and complaints, knew or had reason to know of Defendant WINER's dangerous and illegal propensities.

113. Despite such knowledge, HEXCLAD negligently failed to supervise Defendant WINER in his position as a supervisor, where he was able to commit wrongful acts of sexual misconduct against Plaintiff.

114. HEXCLAD failed to provide reasonable supervision of Defendant WINER, failed to use reasonable care in investigating Defendant WINER, and failed to provide adequate warning to Plaintiff about Defendant WINER's dangerous propensities and unfitness. Defendants further failed to take reasonable steps to ensure the safety of Plaintiff, from sexual harassment, and discrimination based on Plaintiff's race, sex and gender.

115. Defendants owed Plaintiff a duty of care to act in a reasonable and ordinary manner so as not to cause Plaintiff any foreseeable harm.

116. Defendants, and each of them, failed to use ordinary and reasonable care in order to avoid injury to Plaintiff. This includes, but is not limited to, Defendants' failure to prevent the

individually named Defendants from harassing, sexually harassing, and discriminating against Plaintiff.

117. HEXCLAD should have known that WINER was discriminating against, harassing, and sexually harassing Plaintiff because of Plaintiff's race, sex and gender. HEXCLAD failed to take appropriate and corrective action.

118. HEXCLAD had been informed of the discriminatory, harassing, and sexually harassing conduct of WINER and, despite being informed of their unlawful conduct, HEXCLAD failed to discipline WINER and kept him in their employ, thereby ratifying said unlawful conduct.

119. HEXCLAD was put on notice, and had reason to know, that WINER had previously engaged and continued to engage in unlawful sexual conduct and sexual harassment with Plaintiff, and that it was, or had reason to know, it would have been foreseeable that they were engaging, or would engage, in illicit sexual harassment with Plaintiff, under the cloak of his authority, confidence, and trust, bestowed upon them through Defendants.

120. HEXCLAD was placed on actual or constructive notice that WINER had sexually harassed and discriminated against Plaintiff. HEXCLAD had knowledge of inappropriate conduct and harassment committed by WINER during his employment yet chose to allow him to remain unsupervised continued to sexually harass, harass, and discriminate against Plaintiff and other individuals throughout the remainder of Plaintiff's employment.

121. HEXCLAD breached its duties of care to Plaintiff by allowing WINER to come into contact with Plaintiff without supervision and by failing to adequately hire, supervise and retain WINER whom it permitted and enabled to have access to Plaintiff.

122. HEXCLAD breached its duties to Plaintiff by failing to investigate or otherwise confirm or deny such facts of sexual harassment and discrimination by WINER, and by placing WINER in a position of authority.

123. HEXCLAD breached its duty to Plaintiff by failing to adequately monitor and supervise WINER and failing to prevent WINER from harassing, sexually harassing, and discriminating against Plaintiff. Prior complaints and rebuffs of Plaintiff against Defendant WINER caused Defendant HEXCLAD to know, or gave HEXCLAD reason to know, of Defendant WINER's

discriminatory and harassing behavior

124. HEXCLAD's conduct constitutes negligence and is actionable under the laws of the State of California.

125. As a result of the above-described conduct, Plaintiff has suffered and continues to suffer without limitation insomnia, racing thoughts, anxiety, nightmares, low confidence, depression, post-traumatic stress, severe emotional distress, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

126. HEXCLAD's conduct was oppressive, malicious and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and were carried out with a conscious disregard of Plaintiff's right to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code section 3294, entitling Plaintiff to punitive damages against Defendant HEXCLAD in an amount appropriate to punish and set an example of Defendant HEXCLAD.

## XI.

## EIGHTH CAUSE OF ACTION FOR NEGLIGENT HIRING & RETENTION

(Against Defendant HEXCLAD)

127. Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

128. Defendant HEXCLAD knew or should have known that Defendant WINER was discriminating against Plaintiff because of her race, sex and gender.

129. Defendants HEXCLAD failed to take appropriate and corrective action.

130. HEXCLAD was put on notice, and had reason to know, that WINER had previously engaged and continued to engage in unlawful race, national origin, sex and gender discrimination, and knew, or had reason to know, that it would have been foreseeable that he was engaging, or would engage, in illicit race, sex and gender, discrimination and harassment with Plaintiff, and others, under

the cloak of their authority, confidence, and trust, bestowed upon him through Defendant HEXCLAD,

131. HEXCLAD was placed on actual or constructive notice that Defendant WINER had discriminated against Plaintiff during her employment.

132. HEXCLAD had knowledge of inappropriate conduct and harassment committed by WINER during Plaintiff's employment yet chose to allow WINER to remain unsupervised where WINER sexually harassed, harassed, and discriminated against Plaintiff throughout the remainder of Plaintiff's employment.

133. Had HEXCLAD taken prompt and corrective action against WINER, the latter would not have discriminated against Plaintiff.

134. HEXCLAD owed Plaintiff a duty of care to act in a reasonable and ordinary manner so as not to cause Plaintiff any foreseeable harm.

135. HEXCLAD failed to use ordinary and reasonable care in order to avoid injury to Plaintiff. This includes, but is not limited to, Defendants' failure to prevent WINER from discriminating against Plaintiff.

136. HEXCLAD had been informed of the discriminatory and harassing conduct of WINER, and, despite being informed of the unlawful conduct, Defendant HEXCLAD failed to discipline WINER and kept him in their employ, thereby ratifying said unlawful conduct, in addition to encouraging said conduct to continue.

137. HEXCLAD's conduct constitutes negligence and is actionable under the laws of the State of California.

138. As a direct and proximate result of the acts of Defendant HEXCLAD, Plaintiff has suffered, without limitation, without limitation insomnia, racing thoughts, anxiety, nightmares, low confidence, depression, post-traumatic stress, and severe emotional distress.

//

//

**XII.**

**NINTH CAUSE OF ACTION FOR CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY**

(Against Defendant HEXCLAD)

139. Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

140. Gov't Code § 12920 declares that it is the public policy of California that "it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of sex, gender, religious creed, color, national origin, sex."

141. As set forth above, Defendant HEXCLAD subjected Plaintiff to working conditions that violated public policy in that Defendant HEXCLAD subjected Plaintiff to discrimination, harassment, and sexual harassment related to her race, sex and gender, as described above.

142. HEXCLAD intentionally created and knowingly permitted these working conditions that subjected Plaintiff to harassment, discrimination, and sexual harassment.

143. These working conditions were so intolerable that a reasonable person in Plaintiff's position would have had no reasonable alternative except to resign.

144. Plaintiff resigned because of these working conditions.

145. Plaintiff believes that the working conditions under HEXCLAD were unusually aggravated such that it was intolerable to continue working in the environment where she may be further subjected to discrimination, harassment, and sexual harassment. Plaintiff was therefore constructively discharged from her employment with HEXCLAD and as such suffered social humiliation, emotional pain, mental pain, and anguish.

146. Plaintiff's constructive termination was in violation of fundamental public policies as set forth above.

147. As a proximate result of the wrongful acts of Defendant HEXCLAD, Plaintiff has been harmed in that Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation loss of salary and benefits, and the intangible loss of employment-related

opportunities for growth in her field and damages to her professional reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civ. Code §§ 3287 and/or 3288 and/or any other provision of law providing for prejudgment interest.

148. As a proximate result of the wrongful acts of Defendant HEXCLAD, and each of them, Plaintiff has suffered and continues to suffer without limitation insomnia, racing thoughts, anxiety, nightmares, low confidence, depression, post-traumatic stress, and severe emotional distress. Plaintiff will continue to experience said pain and mental and emotional suffering for a period in the future she cannot presently ascertain, all in an amount subject to proof at the time of trial.

149. The acts taken toward Plaintiff were carried out by and/or ratified by Defendant HEXCLAD and/or managing agents or employees of Defendant HEXCLAD acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner in order to injure and damage Plaintiff, thereby justifying an award to her of punitive damages in a sum appropriate to punish and make an example of Defendant HEXCLAD.

## XIII.

## TENTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Against all Defendants)

150. The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

151. By engaging in the above-described conduct, Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress.

152. Plaintiff has suffered and continues to suffer without limitation insomnia, racing thoughts, anxiety, nightmares, low confidence, depression, post-traumatic stress, and severe emotional distress.

153. Plaintiff’s damages were the actual and proximate causation of the emotional distress

caused by Defendants' outrageous conduct.

154. Defendants' conduct was reckless and with a conscious disregard of Plaintiff's rights. Plaintiff is therefore entitled to an award of punitive damages against Defendants in an amount to be determined by proof at trial.

## XIV.

## ELEVENTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

(Against Defendant HEXCLAD)

155. The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

156. Defendant HEXCLAD knew or should have known that Defendant WINER was discriminating, harassing, and sexually harassing Plaintiff because of Plaintiff's race, sex and gender.

157. Defendants HEXCLAD failed to take appropriate and corrective action.

158. Had HEXCLAD taken prompt and corrective action against WINER, the latter would not have discriminated, harassed, and sexually harassed Plaintiff.

159. Defendants, and each of them, owed Plaintiff a duty of care to act in a reasonable and ordinary manner so as not to cause Plaintiff any foreseeable harm.

160. Defendants, and each of them, failed to use ordinary and reasonable care in order to avoid injury to Plaintiff. This includes, but is not limited to, Defendants' failure to prevent the individually named Defendants from discriminating, harassing, and sexually harassing Plaintiff.

161. HEXCLAD had been informed of the discriminatory, harassing, and sexually harassing conduct of Defendant WINER, and despite being informed of their unlawful conduct, HEXCLAD failed to discipline WINER and kept WINER in its employ, thereby ratifying said unlawful conduct, in addition to encouraging said conduct to continue.

162. Defendants' conduct constitutes negligence and is actionable under the laws of the State of California.

163. As a direct and proximate result of the acts of Defendants, Plaintiff has suffered,

without limitation insomnia, racing thoughts, anxiety, nightmares, low confidence, depression, , post-traumatic stress, and severe emotional distress.

164. As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

165. Defendants' conduct was reckless and with a conscious disregard of Plaintiff's rights. Plaintiff is therefore entitled to an award of punitive damages against Defendants in an amount to be determined by proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows as to all causes of action:

a. for general, compensatory, and special damages in an amount according to proof for Plaintiff's injuries, mental and emotional distress, medical expenses, actual financial losses, consequential financial losses, incidental financial losses, loss of past and future earnings, loss of salary and benefits, and all damages flowing therefrom for an amount in excess of $10,000,000;

b. for all general and special damages to compensate Plaintiff for an amount in excess of $10,000,000;

c. for punitive damages, as allowed by law, that will sufficiently punish, make an example of, and deter future conduct by Defendants for an amount in excess of $10,000,000;

d. for prejudgment and post-judgment interest according to any applicable provision of law, according to proof for an amount in excess of $10,000,000;

e. for attorney's fees and costs for an amount in excess of $10,000,000;

f. for costs of suit; and

g. for such other and further relief as the Court may deem just and proper.

Dated: September 18, 2025

**DEREK SMITH LAW GROUP, LLP**
Attorneys for Plaintiff

By: */s/ Olivia Uzan*
OLIVIA UZAN, ESQ.
633 West 5th Street, Suite 3250
Los Angeles, CA 90071
(310) 602-6050

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues to be tried as provided by California Code of Civil Procedure § 631.

Dated: September 18, 2025

**DEREK SMITH LAW GROUP, LLP**
Attorneys for Plaintiff

By: */s/ Olivia Uzan*
OLIVIA UZAN, ESQ.
633 West 5th Street, Suite 3250
Los Angeles, CA 90071
(310) 602-6050